# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

JAMES VERNON BROWN,

        Petitioner,

vs.

LOWELL BRANDT, Warden,

        Respondent.

No. C05-0053

**REPORT AND RECOMMENDATION**

_____

## I.  INTRODUCTION

On February 28, 2005, the petitioner, James Vernon Brown ("Brown"), submitted an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Iowa.  On March 11, 2005, Brown's application was transferred to the United States District Court for the Northern District of Iowa, which is the district where Brown's conviction occurred (docket number 3).  On June 15, 2005, Brown filed an amended application (docket number 13).  On December 20, 2005, this matter was referred to the undersigned for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (docket number 23).

In his application (and amended application) for a writ of habeas corpus, Brown claims that he was denied his Sixth Amendment right to effective assistance of trial and appellate counsel as a result of counsels' failure to preserve error with respect to a pattern of prosecutorial misconduct.  This matter is before the court on Brown's brief regarding his application for a writ of habeas corpus (docket number 18), the respondent's brief (docket number 20) and Brown's reply brief (Docket No. 21).

## II. PROCEDURAL BACKGROUND

### A. Trial

In the Iowa District Court in and for Linn County, Brown was charged via trial information with second degree sexual abuse in violation of Iowa Code § 709.3. State v. Brown, No. FECR25149-0598 (Linn County Dist. Ct. 1998).[1] Brown proceeded to trial on September 21, 1998 and the jury returned a guilty verdict on September 24, 1998. On October 30, 1998, the Iowa District Court in and for Linn County sentenced Brown to an indeterminate term of twenty-five (25) years.

### B. Direct Appeal

On appeal, Brown argued that the district court erred in admitting videotape evidence depicting gay pornographic material found at his house. The Iowa Court of Appeals affirmed Brown's conviction on March 15, 2000. State v. Brown, 2000 WL 278548 (Iowa Ct. App. 2000). Brown's application for further review was denied on July 17, 2000. Procedendo issued on July 17, 2000.

### C. State Application for Post-Conviction Relief

On June 20, 2001, Brown filed an application for post-conviction relief pursuant to Iowa Code Chapter 822 in the Iowa District Court in and for Linn County. Brown v. State, No. LACV 40417. Following trial held on May 14, 2003, Judge Kristin L. Hibbs denied Brown's application for post-conviction relief on August 20, 2003.

On September 17, 2003, Brown filed his notice of appeal. On October 27, 2004, the Iowa Court of Appeals affirmed Judge Hibbs' decision. Brown v. State, No. 03-1520, 695 N.W.2d 41, 2004 WL 2387044 (Iowa Ct. App. 2004). On February 22, 2005, the Iowa Supreme Court denied Brown's application for further review.

---

[1] Iowa state court criminal and civil records may be accessed at the following address: www.judicial.state.ia.us/online_records/. See Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

## D.  Federal Application for a Writ of Habeas Corpus

On February 28, 2005, Brown filed an application for a writ of habeas corpus.  In his application for a writ of habeas corpus, Brown asserted one ground for relief, i.e., that his constitutional right to due process and a fair trial was denied as the result of several instances of prosecutorial misconduct.  Brown subsequently amended his application to assert that he was denied his constitutional right to effective assistance of trial and appellate counsel as a result of counsels' failure to preserve error with respect to a pattern of several enumerated instances of prosecutorial misconduct.  On June 3, 2005, the respondent filed an answer to Brown's original application for a writ of habeas corpus.  On October 19, 2005, Brown filed a brief on the merits.  On November 8, 2005, the respondent filed a responsive brief.  On November 14, 2005, Brown submitted a reply brief.  On June 3, 2005 the respondent filed the relevant state court documents.

## III.  FACTUAL BACKGROUND[2]

Brown was hired to provide care for B.C. for the summer of 1997.  B.C. suffers from Attention Deficit Hyperactivity Disorder (ADHD), and was on medication for this disorder.  Toward the end of summer, B.C. told his mother that he did not want to spend time with Brown, but would not specify a reason.  On a "couple of occasions" that summer, B.C. showed his mother the toilet paper he had used after a bowel movement that had blood on it.  B.C.'s mother attributed it to hemorrhoids, and did not inquire further.

On May 15, 1998, B.C. told his mother that Brown had done "nasty things" and made him look at very nasty pictures on the computer.  On May 16, 1998, B.C.'s mother questioned him further to determine what had prompted him to say this and he told her "I

---

[2] The facts and evidence are summarized in the light most favorable to the verdict.  See Hendricks v. Lock, 238 F.3d 985, 986 (8th Cir. 2001); Copeland v. Washington, 232 F.3d 969, 971 (8th Cir. 2000); Mallet v. Bowersox, 160 F.3d 456, 458 (8th Cir. 1998).  Additional facts, i.e., the specific incidents of alleged prosecutorial misconduct and ineffective assistance of counsel will be discussed in the court's analysis where relevant.

went poop and it hurt, mom." B.C.'s mother had him examined by his pediatrician and contacted DHS. Ultimately, the police obtained an arrest warrant for Brown and a search warrant for his apartment.

In executing the search warrant, police discovered several floppy disks containing graphic homosexual pornography. Criminalist Doug Elrick of the DCI lab transposed the 223 images into a videotape "slide show" format. Police also found several homosexual pornographic magazines and videos. Brown was charged with sexual abuse in the second degree.

Prior to trial, Brown filed a motion in limine to exclude the videotape of the images, the magazines, the videos, and statements Brown made to the police that he was gay. The trial court granted Brown's motion with respect to the magazines, videos, and statements. The trial court concluded that the videotape of the images was admissible as it corroborated B.C.'s statements that he had seen or been shown pornographic images on Brown's computer.

Trial commenced on September 21, 1998. B.C. testified that Brown had engaged him in both oral and anal sex. Dr. Opdebeeck, B.C.'s pediatrician, testified that she had examined the rectal area of B.C. and had found scarring and a skin tag which was consistent with sexual abuse, but also may have been caused by bowel movements. Ultimately, Dr. Opdebeeck testified that, in her professional opinion, sexual abuse had caused the scarring. The jury was shown the twelve minute videotape containing 223 images.

Brown testified in his own defense. He testified that in all of his previous interactions with children, no one had ever accused him of sexual abuse. Brown also testified regarding B.C.'s poor behavior during the summer of 1997, and that B.C. had threatened him often that he would tell his mother that Brown had "messed with" him. Brown denied sexually abusing B.C., and denied showing Brown any pornography.

Brown testified that there were no "kids or kiddy porn" on any of the disks he had. The jury returned a verdict finding Brown guilty of second degree sexual abuse as charged.

## IV.  STANDARDS OF REVIEW

Brown asserts that he was deprived of his constitutional right to effective assistance of trial and appellate counsel as a result of counsels' failure to preserve error with respect to a pattern of prosecutorial misconduct.

Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." Weaver v. Bowersox, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims of legal error are governed by the first subparagraph while claims of factual error fall within the second subparagraph. See id. at 1029-30. Brown's application implicates both § 2254(d)(1) and (d)(2).

## A.  Standard of review under 28 U.S.C. § 2254(d)(1)

Under 28 U.S.C. § 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The Supreme Court's opinion in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), explains the meaning of those statutory concepts and the degree of

deference that must be afforded to state court determinations on the merits in federal habeas corpus proceedings concerning state prisoners under the AEDPA. See Newman v. Hopkins, 247 F.3d 848, 850-52 (8th Cir. 2001) (discussing effect of Williams); Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001) (same); see also Ryan v. Clark, 387 F.3d 785, 790 (8th Cir. 2004) (stating only limited and deferential review of underlying state court decisions in habeas corpus cases is permitted).

Under Williams, a state-court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." Williams, 529 U.S. at 405. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. at 412.

An "unreasonable application" of Supreme Court precedent can also arise in one of two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 407 (citing Green v. French, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision

'involving an unreasonable application of . . . clearly established federal law.'" Id. at 407-08.  Notably, however,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 411 (emphasis added).

Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa court correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of Brown's claims.  See, e.g., Rousan v. Roper, 436 F.3d 951, 955-56 (8th Cir. 2006) (discussing applicable standard); Newman, 247 F.3d at 850-52 (same); Weaver v. Bowersox, 241 F.3d 1024, 1029-30 (8th Cir. 2001) (same); Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (same).

## B.  Standard of review under 28 U.S.C. § 2254(d)(2)

"Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact."[3]  Weaver, 241 F.3d at 1030.  Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless Brown rebuts that presumption with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); see

---

[3] 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

also <u>Weaver</u>, 241 F.3d at 1030 ("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings . . ."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" <u>Weaver</u>, 241 F.3d at 1030.

## C. Requirement of Exhaustion

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1).[4] A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); <u>Picard v. Connor</u>, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); <u>Miller v. Lock</u>, 108 F.3d 868, 871 (8th Cir. 1997); <u>Ashker v. Leapley</u>, 5 F.3d 1178, 1179 (8th Cir. 1993); <u>McDougald v. Lockhart</u>, 942 F.2d 508, 510 (8th Cir. 1991) see also 28 U.S.C. § 2254(c).[5] In Iowa, exhaustion requires a petitioner

---

[4] 28 U.S.C. § 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
> (A) the applicant has exhausted the remedies available in the courts of the State, or
> (B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[5] 28 U.S.C. § 2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available

(continued...)

8

to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument. See O'Sullivan v. Boerckel, 526 U.S. 838, 845-48, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (abrogating Dolny v. Erickson, 32 F.3d 381 (8th Cir. 1994)).

The fair presentment component of the exhaustion requirement compels a petitioner to affirmatively:

> refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.

Ashker, 5 F.3d at 1179 (quotations and citations omitted); accord Thomas v. Wyrick, 622 F.2d 411, 413 (8th Cir. 1980). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus application have been properly raised in the prisoner's state court proceedings. Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Flieger v. Delo, 16 F.3d 878, 884 (8th Cir. 1994); see also Keeney v. Tamayo-Reyes, 504 U.S. 1, 8, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

"The purpose of the fair presentation component of the exhaustion requirement is to give state courts the first opportunity to review federal constitutional issues and to correct federal errors made by the state's trial courts." Laws v. Armontrout, 834 F.2d 1401, 1412 (8th Cir. 1987); see also Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (same). If a petitioner has not fully presented his or her federal claims in state court, the claims are barred in federal court and must be dismissed, unless the petitioner can either show both good cause for his or her failure to

_____

(...continued)
procedure, the question presented.

present the claims in state court and actual prejudice as a result of the alleged constitutional violation or demonstrate that failure to review the claim would result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Keithley, 43 F.3d at 1218; Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992); Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989).

## V.  DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."  Strickland v. Washington, 466 U.S. 668, 684 (1984).

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364 (1993) (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)).  A criminal defendant is also entitled to effective assistance of counsel on a first appeal as of right.  Rogers v. United States, 1 F.3d 697, 700 (8th Cir. 1993); Estes v. United States, 883 F.2d 645, 648 (8th Cir. 1989).

The United States Supreme Court has reformulated the Strickland test for constitutionally ineffective assistance of counsel in Lockhart v. Fretwell, 506 U.S. 364 (1993), and the Eighth Circuit Court of Appeals has applied that test.

> Counsel is constitutionally ineffective under Fretwell when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (citing Lockhart, 506 U.S. at 364, 113 S. Ct. at 842-43).

Where conduct does not prejudice the defendant, the court need not address the reasonableness of that conduct.  Id. at 691; United States v. Williams, 994 F.2d 1287,

1291 (8th Cir. 1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as the result of counsel's performance. Lockhart v. Fretwell, 506 U.S. 364 (1993); West v. United States, 994 F.2d 510, 513 (8th Cir. 1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. Id. at 372; West v. United States, 994 F.2d 510, 513 (8th Cir. 1993) (quoting Fretwell). Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Williams, 994 F.2d at 1291 (quoting Strickland).

## B. Prosecutorial Misconduct

Generally speaking, "prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [a] petitioner's conviction a denial of due process." Stringer v. Hedgpeth, 280 F.3d 826, 829 (8th Cir. 2002) (quoting Louisell v. Dir. of Iowa Dept. of Corr., 178 F.3d 1019, 1023 (8th Cir. 1999). To constitute a due process violation, "improper remarks by a prosecutor must be 'so egregious that they fatally infect [] the proceedings and render [a defendant's] entire trial fundamentally unfair.'" Id. (quoting Moore v. Wyrick, 760 F.3d 884, 886 (8th Cir. 1985). To obtain relief, the petitioner must demonstrate a "reasonable probability that the error complained of affected the outcome of the trial - i.e, that absent the alleged impropriety the verdict probably would have been different." Id. (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995).

Brown argues that the Iowa Court of Appeals' decision regarding prosecutorial misconduct, and its prejudicial effect, was objectively unreasonable as to the facts and to the law, as was the Iowa Court of Appeals' decision regarding ineffective assistance of

counsel.  The court will address each alleged incident of prosecutorial misconduct, and corresponding allegation of ineffective assistance of counsel, in turn.[6]

### 1.    Improper Expert Opinion of Dr. Opdebeeck

Brown first challenges the trial testimony of Dr. Opdebeeck.  Dr. Opdebeeck testified that she found a "skin tag" at the six o'clock position of B.C.'s rectal area, which was "not normal" and that skin tags were caused by "[a]nything that would stretch that tissue past the point of elasticity," that the skin tag found on B.C.'s rectal area was "consistent with sexual abuse," and that it could have been the result of "an adult penis being forced into the rectum."   Dr. Opdebeeck testified that in rare cases severe constipation could cause a skin tag, but that generally constipation causes "fissures," not skin tags.  The prosecutor then initiated the following exchange without objection:

> Q:    In your professional judgment do you
>       think it was caused by anything like a
>       bowel movement?
>
> A:    I personally don't believe so, no.

Brown argues that by the time in the trial this exchange took place, the cause of B.C.'s rectal injury had been reduced to only two causes - either a bowel movement or penile penetration.  Brown contends that the prosecutor committed misconduct by asking Dr. Opdebeeck to eliminate the only other possible explanation for the injury, which not only bolstered B.C.'s credibility, but also was improper insofar as it stated an opinion as

---

[6] The court rejects Brown's position to the extent that he argues the cumulative effect of either the alleged ineffective assistance of counsel or prosecutorial misconduct deprived him of a fair trial.  <u>Wainwright v. Lockhart</u>, 80 F.3d 1226, 1232 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation.  Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." (citations omitted).  <u>See also</u> <u>Middleton v. Roper</u>, 455 F.3d 838, 851 (8th Cir. 2006) (noting that a habeas petitioner cannot demonstrate prejudice by showing a series of errors, none of which alone would be sufficiently prejudicial).

to Brown's guilt of innocence. Brown argues that his trial counsel was ineffective for failing to object to this exchange.

With respect to this argument, the Iowa Court of Appeals noted Iowa Rule of Evidence 5.704, which provides that "otherwise admissible expert witness opinion testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact" and further noted that an expert witness may not express an opinion on a defendant's guilt or innocence. Brown v. State, 695 N.W.2d 41, 2004 WL 2387044 *3 (Iowa Ct. App. 2004). The Iowa Court of Appeals concluded, however, that:

> Here, Dr. Opdebeeck did not testify as to her belief that Brown was innocent or guilty. Instead, she stated her opinion that she did not believe the victim's injuries were caused by a bowel movement. Because the question and answer were not improper, trial counsel did not breach an essential duty by failing to object.

This court has reviewed the record in its entirety and finds that Brown has not shown that the Iowa Court of Appeals' decision in this respect was an unreasonable application of Strickland. The question posed did not ask Dr. Opdebeeck to opine directly as to Brown's guilt or innocence. Brown's trial counsel testified that he did not object to this exchange because Dr. Opdebeeck had previously testified that the skin tag could have been caused by a bowel movement, and he thought the jury might find Dr. Opdebeeck not to be credible based on her conflicting statements. This is not unreasonable trial strategy. See Garrett v. Dormire, 237 F.3d 946, 949-50 (8th Cir. 2001) ("There is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy.") (citations omitted); Strickland, 466 U.S. at 688-91 (noting that reasonable trial strategy cannot rise to the level of ineffective assistance of counsel). Brown was not denied his due process right to a fair trial by the prosecutor's question or by Dr. Opdebeeck's answer. Brown is not entitled to relief on this ground.

## 2. Failure to Disclose Evidence

On the first day of trial, Criminalist Elrick conducted a further examination of Brown's computer, using new software, and recovered ninety-five to one hundred previously deleted files. In response to the prosecutor's question about the images found on Brown's hard drive, Elrick testified that he had found "something of interest" on Brown's computer that morning. Defense counsel objected, an off-record discussion was held, and the objection was sustained. No further reference to the "new" evidence was made before the jury. On post-conviction relief, Brown argued that his trial counsel was ineffective in failing to move to strike Elrick's reference to the "something of interest" and by not requesting a cautionary instruction.

With respect to this argument, the Iowa Court of Appeals found:

> Brown's counsel kept testimony regarding the hard drive from the jury. We conclude that he was not required to act further. Brown cannot show the outcome of trial would have been different had counsel moved to strike and requested a cautionary instruction given the vague reference to Brown's hard drive.

Brown now argues that the Iowa Court of Appeals failed to consider the prosecutor's conduct within the context of the entire trial. Brown claims that by violating the pretrial discovery order and attempting to introduce "something of interest" the prosecutor successfully implanted an impression in the jurors' minds that even more graphic and incriminating evidence had been discovered on the computer and that Brown was preventing them from seeing that evidence.

The jury heard nothing more than Elrick testify that he had found "something of interest" on Brown's computer that morning. Brown's counsel properly objected and the trial court sustained the objection. Brown has demonstrated neither that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Likewise, Brown has not shown to a reasonable probability that the outcome of his trial would have been different absent

either the prosecutor's elicitation of Elrick's "something of interest" testimony or by his trial counsel's motion to strike and requesting of a cautionary instruction. Brown is not entitled to habeas relief on this basis.

### 3.  Introduction of Inadmissible Hearsay

The prosecutor questioned Elrick about his procedure for determining the ages of the persons depicted in the video slide show, shown to the jury. Elrick testified that Dr. Moskal from Broadlawns Hospital made the final determination of the ages of the persons in twenty slides. The prosecutor then asked Elrick for Dr. Moskal's conclusions. Defense counsel objected on hearsay grounds and the objection was sustained. The prosecutor then asked Elrick for his opinion as to the ages of the persons in the slide show. Elrick testified that he believed that twenty of the persons appeared to be under the age of 18, and that three appeared to be under the age of 14.

Brown argues that the prosecutor's conduct in eliciting inadmissible hearsay, i.e., asking Elrick to state the thinly disguised opinion of Dr. Moskal as his own, was deliberate, improper, and done in bad faith. The Iowa Court of Appeals concluded that defense counsel's objection was sufficient and that no hearsay was admitted.

The respondent contends that the Iowa Court of Appeals reasonably held that Brown was not prejudiced by the prosecutor's unsuccessful attempt to elicit hearsay testimony from Elrick because the prosecutor's questions were phrased in terms of Elrick's own personal observations. The respondent further argues that Brown was not prejudiced because the jury verdict in this case in no way depended on the exact age of the young men depicted in the video slide show. The slide show was relevant because it corroborated B.C.'s testimony about what Brown had shown him on the computer and were "instrumentalities" used by Brown to entice B.C. to entice him to participate in sexual conduct.

Brown has not demonstrated that the Iowa Court of Appeals' decision in this regard was either contrary to, or an unreasonable application of, clearly established federal law.

Brown has not shown that he was prejudiced by his trial counsel's performance, as he has not shown that there is a reasonable probability that the result of the proceeding would have been different had the prosecutor not asked for and elicited Elrick's opinion regarding the ages of the persons in the video slide show. Brown was not on trial for child pornography charges, where the ages of persons in the pornographic materials, is an element of the crime. Brown is not entitled to relief on this ground.

### 4.    Incompetent Expert Opinion

Brown argues that the prosecutor engaged in misconduct by asking Elrick to state his opinion as to the ages of the persons depicted in the video slide show, but made no attempt to show that Elrick's opinion was a lay opinion, versus an expert opinion. At the post-conviction relief stage, Brown argued that his trial counsel should have objected, moved to strike, and requested a cautionary instruction. Brown now also contends that the prosecutor's injection of incompetent expert opinion testimony was deliberate, improper, and done in bad faith.

The Iowa court of Appeals concluded that:

> [T]rial counsel did not breach an essential duty in failing to object. Furthermore, we find no prejudice as the jurors could draw their own conclusions about the age of the persons depicted in the slides.

Brown has not demonstrated that the Iowa Court of Appeals' decision in this regard was either contrary to, or an unreasonable application of, clearly established federal law. Brown has not shown that he was prejudiced by his trial counsel's performance, as he has not shown that there is a reasonable probability that the result of the proceeding would have been different had the prosecutor not asked for and elicited Elrick's opinion regarding the ages of the persons in the video slide show. As noted by the Iowa Court of Appeals, the jurors could draw their own conclusions about the ages of the persons depicted in the slides. Brown is not entitled to relief on this basis.

### 5. Impeachment of Petitioner Using "Staci" Letter

On the day of Brown's arrest, a letter addressed to "Staci" and dated July 13, 1997 was seized from Brown's apartment. In the letter, Brown wrote, "[B.C.]'s mother suggested that I lock him in his room. I did not do that. I think that is just too cruel." At trial, B.C.'s mother denied that she told Brown he should lock B.C. in his room. On cross-examination, the prosecutor asked Brown: "Is there any other basis for determining whether that was said other than your word and her word?"

At the post-conviction relief proceeding, Brown contended that the prosecutor's questions were improper, and that his trial counsel was ineffective for failing to introduce the "Staci" letter to support Brown's testimony. The Iowa Court of Appeals held:

> We do not agree the question implies a recent fabrication.
> Therefore, the "Staci" letter would not have bolstered Brown's
> testimony.

Brown now argues that the decision of the Iowa Court of Appeals cannot be reconciled with the rule established by the Iowa Supreme Court that "when an impeached witness denies making a prior inconsistent statement, it is firmly established that even the slightest suggestion of fabrication, improper influence or motive, triggers the rule and allows the admission of a witnesses' prior consistent statement." State v. Gardner, 490 N.W.2d 838, 840-41 (Iowa 1992). Brown claims that the prosecutor knew or should have known that his question implying recent fabrication was improper and contrary to evidence he had in his possession, i.e., the "Staci" letter.

Federal courts do not sit in judgment of state courts' decisions applying rules established by the Iowa Supreme Court. With respect to his prosecutorial misconduct and ineffective assistance allegations, Brown has not established the requisite prejudice. This evidence is not exculpatory or even a matter of significant impeachment. Whether or not B.C.'s mother actually told Brown to lock B.C. in his room as a form of discipline has no relation to whether Brown showed B.C. pornography and sexually abused him. Brown's request for relief on this basis is denied.

### 6.      Veracity of Alleged Victim

During Brown's testimony, the prosecutor asked him several questions regarding the victim's allegations, i.e., (1) "Did [he] just guess that you had pornographic material on your computer?"; (2) "Isn't it a fact that [he] was too young and inexperienced to find this material on your computer?"; (3) "Can you offer any explanation . . . why suddenly in May he would make these detailed allegations against you?"; (4) "You don't have really any explanation why he would accuse you of that?"; (5) "Can you account for how [he] would know for instance that anal intercourse could be painful or would be painful?"; and (6) "Is that a complete fabrication in your view?"  Brown's trial counsel did not object to any of these questions.

On appeal, the state conceded that the prosecutor's question to Brown regarding whether B.C.'s accusations were a complete fabrication was improper.  The Iowa Court of Appeals, citing State v. Graves, 668 N.W.2d 860 (Iowa 2003) as authority, found Brown was not prejudiced by this one isolated, improper question.  The Iowa Court of Appeals concluded that the other five questions were proper and, therefore, trial counsel had no duty to object.

Brown contends that the Iowa Court of Appeals erred by limiting the prohibition in Graves to questions that explicitly ask whether the witness is lying, arguing that Graves does not support such a narrow interpretation.

As set forth above, it is not the role of federal courts to second guess the application of state law by state courts.  Further, the decision as to whether to object to cross-examination questions posed to an articulate defendant is often a matter of strategy that should not be subjected to Monday-morning quarterbacking.  Brown has not shown that the outcome of his trial would have been different had the prosecutor not embarked on this line of questioning.  Brown is not entitled to relief on this basis.

### 7.      Personal Opinion

In his rebuttal closing argument, the prosecutor stated: "We're not trying a pornography case here but I as a 53 year-old parent look at that and I say those are children." Brown characterizes the prosecutor's comment as improper, deliberate, and made in bad faith.

The Iowa Court of Appeals, again citing <u>Graves</u>, as authority, found that:

> Here, the prosecutor did not comment on whether Brown lied. He did not give his personal opinion of Brown's credibility. Nor did the prosecutor unfairly disparage Brown. Instead, he commented on his belief that some of the slides depicted minors. This is a judgment the jury would have to make themselves. While the prosecutor's comments may have been improper, we cannot say they were prejudicial.

This was not a child pornography case. The ages of the people depicted in the video slide show was not an issue that had to be decided by the jury in considering the sexual abuse allegations against Brown. Again, the state courts' application of state law is outside the province of federal habeas review. Moreover, Brown has not demonstrated that the outcome of his sexual abuse trial would have been different had the prosecutor not made such a comment. Brown is not entitled to relief on this ground.

## VI. CERTIFICATE OF APPEALABILITY

In a habeas proceeding before the district court, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. <u>See</u> 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. <u>See</u> 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and <u>Fed. R. App. P.</u> 22(b). <u>See</u> <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only issue if a petitioner has made a substantial showing of the denial of a constitutional right. <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36, 123 S. Ct.

1029, 154 L. Ed. 2d 931 (2003); <u>Garrett v. United States</u>, 211 F.3d 1075, 1076-77 (8th Cir. 2000); <u>Carter v. Hopkins</u>, 151 F.3d 872, 873-74 (8th Cir. 1998); <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997); <u>Tiedeman</u>, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. <u>Cox</u>, 133 F.3d at 569 (citing <u>Flieger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994)). <u>See also</u> <u>Miller-El</u>, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" <u>Miller-El</u>, 537 U.S. at 338 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>See</u> <u>Slack</u>, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that Brown failed to make the requisite "substantial showing" with respect to the claims he raised in his application pursuant to 28 U.S.C. § 2254. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Fed. R. App. P.</u> 22(b). Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the court recommends that a certificate of appealability pursuant to 28 U.S.C. § 2253 not be granted.

## VII. CONCLUSION

In sum, Brown is not entitled to relief pursuant to 28 U.S.C. § 2254. The Iowa courts' adjudication of Brown's claims neither resulted in a decision contrary to, or

involving an unreasonable application of, clearly established federal law nor resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this court recommends that Brown's application for a writ of habeas corpus be denied. It is also recommended that a certificate of appealability be denied.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[7] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the Petitioner's application for a writ of habeas corpus and that a certificate of appealability be denied.

September 25, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[7]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.